**\*\* E-filed May 26, 2011 \*\***

NOT FOR CITATION

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| JOHN FRENCH, | No. C10-03645 JF (HRL) |
| Plaintiff, | **ORDER GRANTING PLAINTIFF'S MOTION TO COMPEL** |
| v. | |
| JDS UNIPHASE CORPORATION, | [Re: Docket No. 34] |
| Defendant. | |

# BACKGROUND

In October 2008, defendant JDS Uniphase Corporation ("JDSU") acquired Circadiant Systems, Inc. ("Circadiant"). Following the acquisition, plaintiff John French ("French"), co-founder of Circadiant, was hired by JDSU. According to French, the merger agreement between JDSU and Circadiant required JDSU to pay Circadiant's investors a contingent cash consideration (in other words, an "earn-out") if Circadiant's booking targets were met within the first year after the acquisition. In addition, French was granted restricted stock units ("RSUs"). He alleges that JDSU was required to accelerate the vesting of his RSUs if JDSU paid any earn-out to Circadiant's investors within the first year after the acquisition.

Shortly after the acquisition, Circadiant's sales flattened, and JDSU sought to reduce the Circadiant business unit. Under the merger agreement, however, JDSU could not lay off employees in this unit within the first year after the acquisition without the approval of Circadiant's investors.

1  So, JDSU offered the Circadiant investors $500,000 in exchange for their approval. The investors
2  accepted, and JDSU terminated approximately 40% of the Circadiant business unit.
3  French believed that JDSU's $500,000 payment to the Circadiant investors was an earn-out
4  that should have required JDSU to accelerate the vesting of his RSUs. JDSU disagreed. Thereafter,
5  in August 2010, French sued JDSU for breach of contract, breach of the implied covenant of good
6  faith and fair dealing, and violation of the Pennsylvania Wage Payment and Collection Law. Docket
7  No. 1. This Court has diversity jurisdiction over this action.

## THE INSTANT MOTION

9  In May 2009, JDSU's in-house counsel, Kevin Siebert ("Siebert"), negotiated the $500,000
10 payment to the Circadiant investors. At that time, he wrote emails to several JDSU executives about
11 the negotiations (the "Siebert Emails"). Eventually, the Siebert emails were forwarded to French
12 (who at that time was still an employee of JDSU).
13 In the course of discovery in this action, French propounded a number of requests for
14 production of documents on JDSU. These requests sought, among other things, all records and
15 communications relating to the $500,000 payment to Circadiant's investors. JDSU produced
16 responsive documents but it did not include the Siebert Emails. Later, JDSU asserted that the Siebert
17 Emails were protected by the attorney-client privilege.
18 French believes that the Siebert Emails are responsive to his requests and are not privileged,
19 so he has moved to compel their production. Docket No. 34. In his motion, he says that the Siebert
20 Emails merely contain Siebert's status updates about his negotiations and do not contain any legal
21 advice because Siebert, as in-house counsel, was acting in a business, and not a legal, role. He also
22 argues that even if the Siebert Emails are privileged, JDSU waived the privilege by failing to assert
23 it until months after it became aware that French had them.
24 JDSU opposes the motion. Docket No. 41. It, as Siebert's client, argues that the Siebert
25 Emails are privileged because Siebert did, in fact, provide legal advice. However, JDSU's argument
26 is this regard is completely conclusory and based only on Siebert's declaration, which states: "In my
27 May 2009 communications to JDSU managers, including the e-mail that [JDSU employee] My
28 Chung improperly and without my or JDSU's consent, forwarded to John French, I provided my

2

1 legal advice and counsel to JDSU." It further argues that it did not waive the privilege because it
2 timely asserted the privilege.
3 Oral argument was set for May 24, 2011, but the Court vacated the hearing and directed
4 JDSU to submit the Siebert Emails for an *in camera* review.

## LEGAL STANDARD

In California, "[t]he attorney-client privilege, set forth at [California] Evidence Code section 954, confers a privilege on the client 'to refuse to disclose, and to prevent another from disclosing, a confidential communication between client and lawyer . . . .'" Costco Wholesale Corp. v. Superior Court, 47 Cal.4th 725, 732 (2009) (quoting Cal. Evid. Code § 954).[1] A "confidential communication" between the attorney and the client, in turn, is defined as "information transmitted between a client and his or her lawyer <u>in the course of that relationship</u> . . . ." Cal. Evid. Code § 952 (emphasis added).

"The party claiming the privilege has the burden of establishing the preliminary facts necessary to support its exercise, i.e., a communication made in the course of an attorney-client relationship." Costco, 47 Cal.4th at 733 (citing D.I. Chadbourne, Inc. v. Superior Court, 60 Cal.2d 723, 729 (1964); Wellpoint Health Networks, Inc. v. Superior Court, 59 Cal.App.4th 110, 123 (1997)). "Once that party establishes facts necessary to support a prima facie claim of privilege, the communication is presumed to have been made in confidence and the opponent of the claim of privilege has the burden of proof to establish the communication was not confidential or that the privilege does not for other reasons apply." Id. (citing Cal. Evid. Code § 917(a); Wellpoint, 59 Cal.App.4th at 123–24).

## DISCUSSION

The California Supreme Court recently reiterated that the purpose of a communication between an attorney and his or her client is critical to whether the attorney-client privilege applies. Id. at 742 (George, C.J., concurring). It explained:

> The statutory requirement that the communication occur "in the course of" the attorney-client relationship is consistent with the law as it existed prior to the 1965 enactment of section 952. [Citation omitted.] Prior to the enactment of the statute, it

---

[1] In diversity actions, questions of privilege are controlled by state law. See FED. R. EVID. 501; In re Cal. Publ. Utils. Comm'n, 892 F.2d 778, 781 (9th Cir. 1989).

3

long had been established that, in order to be privileged, it was necessary that the communication be made for the purpose of the attorney's professional representation, and not for some unrelated purpose. (*Solon v. Lichtenstein* (1952) 39 Cal.2d 75, 80, 244 P.2d 907 ["A communication to be privileged must have been made to an attorney acting in his professional capacity toward his client"]; *McKnew v. Superior Court* (1943) 23 Cal.2d 58, 64–65, 142 P.2d 1; *Carroll v. Sprague* (1881) 59 Cal. 655, 659–660; *Satterlee v. Bliss* (1869) 36 Cal. 489, 509; see also *Chicago Title Ins. Co. v. Superior Court* (1985) 174 Cal.App.3d 1142, 1151, 220 Cal.Rptr. 507 ["It is settled that the attorney-client privilege is inapplicable where the attorney merely acts as a negotiator for the client, gives business advice or otherwise acts as a business agent"]; *Montebello Rose Co. v. Agricultural Labor Relations Bd.*(1981) 119 Cal.App.3d 1, 32, 173 Cal.Rptr. 856 [communications necessary to "secure or render legal service or advice" are privileged].) Secondary sources reflect the same understanding of the privilege. (2 Witkin, Cal. Evidence (4th ed. 2000) Witnesses, § 116, p. 373, and cases cited ["The burden is on the claimant of the privilege to establish the condition of professional consultation"]; 31 Cal.Jur.3d (2002) Evidence, § 488, p. 764.)

When section 952 is viewed as a whole, it is even clearer that the Legislature intended to extend the protection of the privilege solely to those communications between the lawyer and the client that are made for the purpose of seeking or delivering the lawyer's legal advice or representation. Thus the statute identifies a "'confidential communication' " in *general* terms as meaning "information transmitted between a client and his or her lawyer in the course of that relationship," but the provision also supplies more *specific* examples of what is meant by adding that a confidential communication "includes a legal opinion formed and the advice given by the lawyer in the course of that relationship." Under the principle of statutory construction known as "*ejusdem generis,*" the general term ordinarily is understood as being "'restricted to those things that are similar to those which are enumerated specifically.' " (*Harris v. Capital Growth Investors XIV* (1991) 52 Cal.3d 1142, 1160, fn. 7, 278 Cal.Rptr. 614, 805 P.2d 873.) It follows that in order to be privileged, the information transmitted between the lawyer and the client must be similar in nature to the enumerated examples—namely, the lawyer's legal opinion or advice.

Id. at 742-43.

For this reason, "the privilege is not applicable when the attorney acts merely as a negotiator for the client or is providing business advice . . . ; in that case, the relationship between the parties to the communication is not one of attorney-client." Id. at 735 (citing Aetna Cas. & Sur. Co. v. Superior Court, 153 Cal.App.3d 467, 475 (1984)); see also Montebello Rose Co., 119 Cal. App.3d at 32 ("Since Montebello's labor negotiations could have been conducted by a nonattorney, it is self-evident that communications with [its negotiating attorney] relating to the conduct of those negotiations were not privileged unless the dominant purpose of the particular communication was to secure or render legal service or advice. The fact that some of the communications involved strategy decisions regarding conduct of the negotiations which may have had 'legal significance'

4

with regard to a future unfair labor practice charge, i.e., the alleged failure to negotiate in good faith, does not mean that the dominant purpose of these communications was of a legal nature.").

Indeed, communications made both in furtherance of the attorney-client relationship <u>and</u> for a purpose independent of the relationship are privileged only if the "dominant purpose" is to further objectives of the attorney-client relationship. <u>Costco</u>, 47 Cal.4th at 735; <u>Aetna</u>, 153 Cal.App.3d at 475.

Upon *in camera* review of the Siebert Emails, the Court does not believe that Siebert was providing legal advice to the JDSU executives. Rather, he was updating the executives about his ongoing negotiations with respect to the $500,000 payment. Even if some of the communications involved the strategy for Siebert's negotiations and even if those decisions may have had "legal significance," the Court does not believe that the dominant purpose of these communications was of a "legal nature." See <u>Montebello Rose Co.</u>, 119 Cal. App.3d at 32. Thus, since the Siebert Emails do not reflect legal advice, they are not protected from disclosure by the attorney-client privilege. French's motion is granted.

## CONCLUSION

Based on the foregoing, French's motion is GRANTED. JDSU shall produce the Siebert Emails to French within five days from the date of this order.

**IT IS SO ORDERED.**

Dated: May 25, 2011

HOWARD R. LLOYD
UNITED STATES MAGISTRATE JUDGE

5

**C10-03645 JF (HRL) Notice will be electronically mailed to:**

| | |
|---|---|
| Amy Elizabeth Beckstead | amy.beckstead@dlapiper.com, claudia.tucker@dlapiper.com, jennifer.stehouwer@dlapiper.com |
| John Robert Shuman, Jr | bob.shuman@dlapiper.com, maurene.martin@dlapiper.com |
| Rodney B. Sorensen, Esq | rbs@paynefears.com, bbirchett@paynefears.com, SF.CourtNotices@paynefears.com |

**Counsel are responsible for distributing copies of this document to co-counsel who have not registered for e-filing under the court's CM/ECF program.**